IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA L.,[1]

        Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 3:18-cv-00349-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Lisa L. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Social Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

Born in 1962, plaintiff alleges disability beginning February 7, 2010, due to anxiety, depression, fibromyalgia, migraines, and irritable bowel syndrome. Tr. 187, 199, 219. On May 16, 2014, the Administrative Law Judge ("ALJ") issued a decision finding plaintiff not disabled. Plaintiff timely appealed that decision to this Court on December 10, 2015. Tr. 881. On January 19, 2017, this Court affirmed the ALJ's decision as to all issues except for the medical opinion of Neal Musselman, D.O. Tr. 884-910. Based on this error, the Court reversed the ALJ's 2014 decision and remanded for further proceedings. Tr. 883.

On September 22, 2017, the ALJ held a second hearing, wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 805-36. On November 7, 2017, the ALJ issued a partially favorable decision, finding plaintiff disabled as of August 17, 2017, her 55th birthday. Tr. 776-94. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 911-15.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 779. At step two, the ALJ determined plaintiff's fibromyalgia, migraines, aneurysm, anxiety disorder, and personality disorder were medically determinable and severe as of the alleged onset date. Id. After the date last insured (i.e., March 31, 2015), the ALJ found the following additional impairments medically determinable and severe: cervical spine degenerative disc disease and ankylosing spondylitis. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 780.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that, as of the alleged onset date, plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> she can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch or crawl. She must avoid concentrated exposure to hazards. She is limited to the performance of simple, routine, repetitive tasks, consistent with unskilled work. She can have no contact with the public. She can have superficial contact with coworkers. She is limited to low stress work, which is defined as requiring few decisions and few changes. She can work at a standard or ordinary pace, but she cannot work at a strict production rate pace.

Tr. 782. Beginning on the date last insured, the ALJ also found that plaintiff can "frequently reach overhead bilaterally." Id.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 792. At step five, the ALJ concluded that, prior to her 55th birthday, plaintiff was capable of performing other work existing in significant numbers in the national economy despite her impairments, such as office helper, mail room sorter, and silver wrapper. Tr. 793. However, beginning on August 17, 2017, the date plaintiff's age category changed, the ALJ found her disabled. Tr. 793-94.

## DISCUSSION

This case hinges on whether there is sufficient evidence in the record to establish an earlier disability onset date. Specifically, plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom statements; (2) failing to address the lay testimony of her son, Robert F.; and (3) rejecting the medical opinions of physician assistant Daniela Schlechter-Keenan, social worker Leslie Ann Gellert, counselor Sharon Cabana, and Dr. Musselman.

## I.    Plaintiff's Testimony

Plaintiff asserts the ALJ erred by discrediting her subjective pain testimony regarding the extent of her impairments. Pl.'s Opening Br. 12-14 (doc. 16). When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead should assess whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

This Court previously considered and affirmed the ALJ's rejection of plaintiff's testimony. Tr. 28-34, 906-08. On remand, the ALJ relied on many of the same legally valid reasons: both the 2014 and 2017 ALJ decisions cited to plaintiff's activities of daily living, failure to seek treatment or follow her providers' recommendations, and ability to work for many years with the same

allegedly disabling impairments, as well as the lack of corroborating medical evidence. Compare Tr. 782-92, with Tr. 28-34. Plaintiff now attacks those reasons on the same bases she did in her prior appeal, such that plaintiff presented no justification for this Court to diverge from its prior ruling. See Khal v. Colvin, 2015 WL 5092586, *3-5 (D. Or. Aug. 27, 2015), aff'd, 690 Fed.Appx. 499 (9th Cir. 2017) (affirming the ALJ's decision in regard to the claimant's subjective symptom testimony under virtually identical circumstances) (citations omitted); see also Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("[t]he Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility") (citation omitted).

Significantly, plaintiff does not refer to any new evidence concerning "worsening in symptoms" or of "disabling impairment outside the home." Pl.'s Opening Br. 12-14 (doc. 16). Rather, her citations largely pertain to prior statements that were considered pursuant to the ALJ's 2014 decision and affirmed by this Court in January 2017. Id. (citing Tr. 3-56, 60-61, 229-31, 234, 272, 278, 786, 790-91). The remaining citations – i.e., Tr. 699, 821, 1015, 1681 – do not evince any significant disruption in functioning. Id. Indeed, the record generally indicates plaintiff engaged in activities outside the home when she wanted to or believed she needed to. For instance, plaintiff took cabs to medical appointments, independently attended weekly or bi-weekly physical therapy/massage and counseling sessions, completed a group sailing class,[2] engaged in various activities through her synagogue, travelled alone to New Mexico for more than two months to spend time with family, travelled to Seattle for her son's graduation, walked her dog, went

---

[2] Although plaintiff testified that her sailing instructor yelled at her because she was imperiling the boat, she nonetheless managed to return "because I really like sailing." Tr. 815, 821.

camping, and talked to friends. See, e.g., Tr. 687, 689, 700, 703, 737, 815-23, 1152, 1161, 1164, 1184, 1211, 1219, 1225, 1241, 1285, 1357, 1546, 1567, 1574; see also Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (ALJ may discredit a claimant's testimony where his or her daily activities "contradict claims of a totally debilitating impairment") (citations omitted). In other words, plaintiff's 2014 hearing testimony did not materially differ from her 2017 hearing testimony, except to the extent it revealed new activities (e.g., driving, sailing, conducting online research regarding cat breeding, property, and boats). Compare Tr. 51-80, with Tr. 811-27.

Finally, contrary to plaintiff's assertion, the enactment of SSR 16-3p does not constitute a change in controlling law. Pl.'s Reply Br. 2-3 (doc. 19). Indeed, the Ninth Circuit expressly held that SSR 16-3p is a rule clarification as opposed to rule change. See Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what our precedent already required"). Under these circumstances, the Court is precluded from upsetting the ALJ's 2014 assessment of plaintiff's testimony. See Stacy v. Colvin, 825 F.3d 563, 567-69 (9th Cir. 2016) (rule of mandate and law of the case doctrine apply in the Social Security context, meaning that the district court cannot reconsider "an issue that has already been decided by that same court or a higher court in the same case" absent "evidence on remand is substantially different" or a change in controlling law).

Regardless, the ALJ's 2017 evaluation of plaintiff's subjective symptom statements is not erroneous. As discussed herein, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting plaintiff's testimony. The ALJ's decision is affirmed in this regard.

## II.    Lay Testimony

Plaintiff argues the ALJ neglected to provide a legally sufficient reason, supported by substantial evidence, to reject the lay statements of Robert F. Pl.'s Opening Br. 14-15 (doc. 16). Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide a germane reason to reject such testimony. Id. (citation and internal quotation omitted).

Robert F. completed a Third-Party Adult Function Report in December 2011. Tr. 246-53. He indicated plaintiff spends her days studying Kabbalah, doing limited chores, taking care of her cat and dog, and napping. Tr. 246-49. Robert F. further stated that plaintiff leaves the house every few days and "most of the time" has no problem doing so alone. Tr. 249. In terms of hobbies and social activities, Robert F. observed plaintiff reads, knits, takes internet classes, spends time with family, and occasionally "write[s] someone on facebook." Tr. 250. As for functional abilities, he explained that plaintiff's pain, fatigue, and depression limit her ability to lift, stand, complete tasks, and handle stress. Tr. 251-53.

The ALJ neglected to weigh or otherwise discuss Robert F.'s lay statements. Tr. 776-94. Yet the Court finds, to the extent the ALJ implicitly rejected Robert F's report, such an error was harmless. See Molina, 674 F.3d at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Notably, the ALJ afforded "some weight" to the analogous third-party statements from plaintiff's partner, James J., completed in November 2012 and August 2017, and plaintiff does not now challenge that finding on appeal. Tr. 262-69, 789-90, 1014-15; Pl.'s Opening Br. 14-15 (doc.

16). As addressed in section I, the ALJ also provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective symptom statements. Tr. 228-35, 782-92. The reasons and evidence cited by the ALJ in evaluating plaintiff's and James J.'s testimony is equally applicable to Robert F.'s lay statements. See Molina, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (lay witness testimony may also be disregarded on same basis as the claimant's discredited subjective reports). Accordingly, reversal is not warranted as to this issue.

## III. Medical Opinion Evidence

Plaintiff contends the ALJ improperly discounted the opinions of Dr. Musselman, Ms. Schlechter-Keenan, Ms. Gellert, and Ms. Cabana. Pl.'s Opening Br. 5-12 (doc. 16).

### A. Acceptable Medical Source

At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

Plaintiff established care at the Carlsbad Mental Health Center in February 2009 and received intermittent counseling services until October 2010, when she ceased treatment. Tr. 431-96. On November 30, 2011, plaintiff returned to Carlsbad Mental Health Center because she was

experiencing several situational stressors that were exacerbating her anxiety; she initially saw a different provider but commenced care with Dr. Musselman on December 15, 2011. Tr. 496-529.

On January 9, 2012, Dr. Musselman completed a "Provider's Statement/Medical Release" form related to plaintiff's eligibility for cash assistance from the New Mexico Department of Human Services. Tr. 227. Dr. Musselman listed plaintiff's diagnosis as post-traumatic stress disorder ("PTSD") and indicated that she became unable to work "6 months ago." Id. He did "not know" the anticipated duration of her alleged disability but stated, that it was "total." Id.

The ALJ assigned "little weight" to Dr. Musselman's opinion for four reasons. Tr. 786-87. First, the ALJ found plaintiff's "credibility had been questioned in the past when she had sought medical help or called the fire department." Tr. 786. Second, the ALJ determined Dr. Musselman's opinion was inconsistent "with the findings of Dr. Starbird, to whom [plaintiff] did not complain of PTSD symptoms or significant mood problems," and plaintiff's "robust activities of daily living." Tr. 786-87. Third, the ALJ considered "the longstanding nature of [plaintiff's mental health] complaints and the fact that [they] were not work preclusive in the past." Tr. 787. Finally, the ALJ denoted Dr. Musselman's assessment did "not square with his own treatment notes." Id.

An ALJ may disregard "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957. Inconsistency with the record is also a proper basis to reject a doctor's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, contradiction between a doctor's opinion and his treatment notes constitutes a legally sufficient reason to reject that opinion. Valentine, 574 F.3d at 692-93.

Here, substantial evidence supports the ALJ's conclusion. Dr. Musselman treated plaintiff twice before rendering his disability opinion. Tr. 520-30. During Dr. Musselman's initial

evaluation, he reiterated the previous provider's recounting of symptoms and diagnoses of depression, PTSD, anxiety, and cannabis abuse, but noted that plaintiff was "vague in terms of complaints" and "did not present with acute disturbances of mood, thought or behavior consistent with an exacerbation of the above disorders." Tr. 521. He also noted plaintiff "appeared to be stoned"; when confronted with this observation, plaintiff "laughed and stated 'that's funny.'" Id. As such, Dr. Musselman questioned plaintiff's "motivation for treatment." Tr. 522, 528.

During their follow-up session on January 6, 2012, three days before Dr. Musselman authored his disability opinion, plaintiff "present[ed] with a relatively stable mental status and without acute disturbances of mood, thought or behavior." Tr. 530. While plaintiff reported "stuggl[ing] to maintain adequate self-worth," her "[s]leep and appetite [were stable and] her general functioning appears adequate." Id. Dr. Musselman determined that psychotropic medication was not appropriate and instructed plaintiff to return in one month. Id.

After generating his disability opinion, Dr. Musselman continued to treat plaintiff for approximately seven months and chart her persistent symptoms. Tr. 531-37. He nonetheless generally described plaintiff's mental status as "relatively stable" and "without acute disturbances of mood, thought or behavior." Id.

Further, Dr. Musselman did not recommend medication until April 2012 – more than three months after he provided his disability opinion – when plaintiff reported an "increased level of generalized anxiety." Tr. 534. The following session, in June 2012, plaintiff "appear[ed] better focused and less distracted." Tr. 535. In addition to starting medication, plaintiff had relocated from Carlsbad to Santa Fe, New Mexico, to relieve stress associated with living in close proximity to her parents and sister. Id.

Two months later, in August 2012, plaintiff presented for her for final appointment. Tr. 537. She informed Dr. Musselman that she was again relocating – this time to Portland, Oregon – to pursue "a romantic relationship with an old friend." Id. Plaintiff appeared to be doing well at that time. Id. Plaintiff subsequently did not re-initiate mental health treatment for more than one year after moving to Oregon. Tr. 61-62, 80.

Therefore, as the ALJ resolved, Dr. Musselman's chart notes contravene his disability opinion. This is especially true given the timing of Dr. Musselman's medical source statement; plaintiff had only recently resumed mental health treatment at Carlsbad Mental Health Center as of January 2012 and there were concerns surrounding her sobriety and compliance with treatment. Moreover, while plaintiff was experiencing certain stressors and mental health symptoms, there was nothing in the record as of January 2012 to support the attested level of severity. Indeed, as discussed in section I, plaintiff engaged in a relatively wide-slate of daily activities during the adjudication period, some of which are outlined in Dr. Musselman's chart notes.

In sum, the ALJ proffered legally sufficient reasons, supported by substantial evidence, for affording less weight to Dr. Musselman's opinion. Any purported error in relation to the additional rationales furnished by the ALJ is harmless. See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (errors "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The ALJ's assessment of Dr. Musselman's opinion is affirmed.

## B.    Non-Acceptable Medical Sources

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1527(f). At the time

of the ALJ's decision, nonacceptable medical sources included physician's assistants, counselors, and nurse practitioners. 20 C.F.R. §§ 404.1502(a), 416.902(a); SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of a nonacceptable medical, or lay, source, the ALJ need only provide a reason that is germane to that witness. Popa v. Berryhill, 872 F.3d 901, 906-07 (9th Cir. 2017). "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 F.3d at 1114 (citations omitted).

Plaintiff commenced a primary care relationship with Ms. Schlechter-Keenan, P.A., in October 2013. Tr. 710, 1681. In December 2013, plaintiff initiated care with Ms. Gellert (social worker) for treatment of her psychological symptoms. Tr. 702-05. Ms. Gellert provided counseling to plaintiff through February 2013, when Ms. Gellert went on maternity leave. Tr. 687, 689, 696-97, 700-02, 736. In April 2016, Ms. Cabana began providing mental health counseling to plaintiff. Tr. 1124-27. Ms. Cabana provided treatment on a weekly basis through the ALJ's second hearing. Tr. 813, 1125-1226, 1542-75, 1703.

In July 2017, Ms. Schlechter-Keenan filled out a form regarding plaintiff's physical and mental limitations. Tr. 1681-83-05. In terms of physical abilities, Ms. Schlechter-Keenan opined plaintiff could: occasionally lift/carry two to five pounds, frequently lift/carry zero pounds, stand/walk or sit for 30 minutes at one time and for a total of three hours in an eight-hour workday, never climb or balance, and occasionally stoop/bend, kneel, crouch, crawl, reach, handle, and finger. Tr. 1681-82. In terms of mental abilities, Ms. Schlechter-Keenan checked boxes indicting plaintiff was markedly limited in the categories of: concentration, persistence, or pace; ability to interact with others; ability to understand, remember, or apply information; and ability to adapt or manage oneself. Tr. 1682-83. Furthermore, Ms. Schlechter-Keenan indicated plaintiff was likely

to miss two full work days or more per month and would struggle with attention and concentration twenty percent of the time. Tr. 1683.

In August 2017, Ms. Gellert and Ms. Cabana completed forms at the request of plaintiff's attorney.[3] Tr. 1684-86, 1703-05. Regarding Ms. Gellert, plaintiff's attorney first asked whether she believed plaintiff was more limited than the RFC outlined in the ALJ's 2017 decision. Tr. 1684. Ms. Gellert responded plaintiff "would have moderate difficulty with a supervisor/employee relationship dynamic." Id. Ms. Gellert then checked boxes evincing plaintiff was markedly limited in the categories of: concentration, persistence, or pace; ability to interact with others; and ability to adapt or manage oneself. Tr. 1685-86. She also opined plaintiff was moderately limited in her ability to understand, remember, or apply information, and would struggle with responding appropriately to criticism, handling workplace stress, and staying on task. Tr. 1686.

Concerning Ms. Cabana, plaintiff's attorney asked whether plaintiff was likely "to miss 16 hours or more a month from even a simple sedentary job because of her symptoms." Tr. 1703. Ms. Cabana responded in the affirmative and further indicated that plaintiff would experience daily attention and concentration problems. Id. Ms. Cabana also checked boxes demonstrating plaintiff was markedly limited in the categories of: concentration, persistence, or pace; ability to interact with others; and ability to understand, remember, or apply information. Tr. 1704-05. She stated further that plaintiff was moderately limited in her ability to adapt or manage oneself. Tr. 1705.

Although the ALJ analyzed the opinions of Ms. Schlechter-Keenan, Ms. Gellert, Ms. Cabana separately, he largely relied on the same reasons and evidence in affording them "little

---

[3] Ms. Gellert also provided an opinion in August 2014 that was evaluated in this Court's January 2017 decision. Tr. 763-69. Specifically, the Court found that Ms. Gellert's 2014 evaluation was "consistent with Dr. Starbird's assessment" and therefore did not warrant additional RFC limitations. Tr. 894-96, 904-06. As such, Ms. Gellert's 2017 opinion is the sole focus of this appeal. Stacy, 825 F.3d at 567-69.

weight." Tr. 787-88. Namely, the ALJ determined these opinions "did not accord with the overall medical evidence record, including an absence of psychiatric hospitalizations or inpatient treatment, generally unremarkable mental status examinations, with no notations of memory issues and [plaintiff's] testimony of symptom amelioration from continued therapy." Id. Additionally, the ALJ found the assessed limitations in concentration, persistence, or pace and social functioning did "not accord" with plaintiff's ability "to research breeding exotic cats" and "occasion[ally] [shop and] attend a sailing class at the marina," respectively. Id.

To the extent Ms. Gellert opined as to plaintiff's physical impairments, the ALJ rejected that portion of her report as "clearly outside of her area of expertise." Tr. 787. Finally, the ALJ found Ms. Schlechter-Keenan's "assessment of [plaintiff's] issues with headaches does not comport with the absence of emergency room visits for headache exacerbations and [plaintiff's] testimony that Imitrex works to manage her headaches although it may take a period of time to 'kick in.'"[4] Id.

An ALJ may reject a lay opinion that is inconsistent with the medical record. Molina, 674 F.3d at 1111-12. Likewise, inconsistency with activities is a germane reason to reject other source

---

[4] Plaintiff relies on Dale v. Colvin, 823 F.3d 941 (9th Cir. 2016) in asserting error regarding the non-acceptable source opinions. Pl.'s Opening Br. 5-6 (doc. 16). In Dale, the claimant's nurse practitioner provided separate physical and mental functional capacity assessments. 823 F.3d at 943-44. The ALJ divided the nurse practitioner's opinion into two discrete parts and then properly rejected the "exertional and postural limitations" as inconsistent with the underlying treatment notes. Id. at 945. The ALJ purported to accept the nurse practitioner's "manipulative and mental limitations" but failed to fashion an RFC consistent therewith, such that reversal was warranted. Id. Here, in contrast, Ms. Cabana and Ms. Gellert do not independently address plaintiff's physical functional abilities and instead only provide opinions as to her mental restrictions. Tr. 1684-86, 1703-05. In other words, there are no exertional, postural, or manipulative limitations to evaluate in relation to their opinions. Concerning Ms. Schlechter-Keenan, the ALJ did not divide her opinion into two distinct parts, rending Dale inapplicable. See Dale, 823 F.3d at 945 n.3 ("[w]e need not decide whether an ALJ who has not divided an other source's testimony into distinct parts may discount that witness' entire opinion when only some of the opinion is inconsistent with evidence in the record").

testimony. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). An ALJ is also not required to give weight to a mental health specialist's opinion on physical impairments. See Buxton v. Halter, 246 F.3d 762, 775 (6th Cir. 2001) (psychologist not qualified to opine as to disability based on physical conditions); Brosnahan v. Barnhart, 336 F.3d 671, 676 (8th Cir. 2003) (affirming the ALJ's rejection of a psychologist's opinion because, amongst other reasons, it was based on consideration of physical impairments outside her area of expertise).

The ALJ's rejection of Ms. Gellert's and Cabana's opinions, as well as Ms. Schlechter-Keenan's mental limitations, is supported by substantial evidence. These providers' underlying chart notes are not compatible with the assessed degree of impairment. Tr. 655-711, 1124-1226, 1542-75. Ms. Gellert's and Ms. Schlechter-Keenan's notes, in particular, demonstrate intact mood, behavior, mood, affect, orientation, judgment, insight, memory, attention, concentration, and thought content. Tr. 655-711. Moreover, as addressed in other portions of this opinion, plaintiff's daily activities reflect mental capabilities beyond those evaluated by Ms. Cabana, Ms. Gellert, and Ms. Schlechter-Keenan. Critically, in contrast to these providers' delineated severe psychological limitations, plaintiff graduated from a group sailing class; conducted online research regarding boats, property, and breeding cats (because she was considering taking this on as an income-bearing hobby); and traveled independently out-of-state to attend family events. See, e.g., Tr. 687, 689, 700, 703, 737, 815-23, 1152, 1161, 1164, 1184, 1211, 1219, 1225, 1241, 1285, 1357, 1546, 1567, 1574.

Although the ALJ provided legally sufficient reasons, supported by substantial evidence, for discrediting the mental limitations in Ms. Schlechter-Keenan's report, he wholly failed to weigh the assessed physical limitations. In fact, the only physical impairment mentioned in relation to Ms. Schlechter-Keenan's opinion is plaintiff's headaches. Tr. 788. However, as both the ALJ

and Ms. Schlechter-Keenan acknowledged, plaintiff has been diagnosed with fibromyalgia, which is known for causing "chronic pain throughout the body . . . and fatigue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004) (citations omitted); Tr. 779, 1681.

Given that the RFC is drastically different from Ms. Schlechter-Keenan's physical report, the ALJ's omission was not harmless. See Despinis v. Comm'r Soc. Sec. Admin., 2017 WL 1927926, *8-9 (D. Or. May 10, 2017) (reversing the ALJ's assessment of a non-acceptable medical source opinion under analogous circumstances); see also SSR 96-8p, available at 1996 WL 374184 ("[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"). For instance, the ALJ found plaintiff was capable of light exertion work – meaning that she could stand/walk for six hours in an eight-hour workday and frequently lift/carry up to ten pounds – whereas Ms. Schlechter-Keenan opined that plaintiff could only stand/walk for three hours in an eight-hour workday, occasionally lift/carry two to five pounds, and never frequently lift/carry any amount of weight. Tr. 782, 1681. She also indicated plaintiff needed to change position every thirty minutes and lie down for one hour in an eight-hour workday, but these limitations are neither addressed in the ALJ's decision nor reflected in the RFC. Tr. 1681-82. The ALJ's decision is upheld as to Ms. Cabana's and Ms. Gellert's opinions, but reversed as to Ms. Schlechter-Keenan's opinion.

## IV.    Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and

further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As addressed herein, the ALJ committed harmful legal error by discrediting the physical restrictions assessed by Ms. Schlechter-Keenan. The record is nonetheless ambiguous regarding the extent of plaintiff's limitations. On the one hand, Ms. Schlechter-Keenan opined that plaintiff was seriously physically impaired, limiting her to a less than sedentary RFC. Tr. 1681-82. On the other hand, there is little in the record prior to the date last insured to support the degree of limitation attested to by Ms. Schlechter-Keenan. Plaintiff's self-reports, as well as her daily activities, reflect a wider range of physical abilities. See Tr. 823 (plaintiff testifying at the 2017 hearing that she lifts and carries a twenty-five-pound bag of food in order to care for her chickens and dog); see also Tr. 1256-1336, 1422-99, 1588-1618 (plaintiff describing her pain level as "mild" to "moderate" during chiropractic sessions). Furthermore, because Ms. Schlechter-Keenan did not independently examine plaintiff on a routine basis (and when she did, the results were unremarkable), it is unclear what her opinion is based upon beyond plaintiff's subjective symptom statements. See, e.g., Tr. 655-86, 694-95, 698-99, 706-11.

In light of these ambiguities in the record, the Court declines to credit Ms. Schlechter-Keenan's opinion as to plaintiff's physical functional capabilities and instead remands this case for further proceedings. See Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) ("[w]hen an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (citation and internal quotations omitted). Given the remote alleged onset date and date-last insured, use of a medical

expert would be helpful in defining the extent of plaintiff's combined physical and mental limitations. Accordingly, upon remand, the ALJ must consult a medical expert and, if necessary, reformulate plaintiff's RFC and obtain additional vocational expert testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 13th day of December 2018.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge